672 So.2d 268 (1996)
Gloria SANCHEZ
v.
LIBERTY LLOYDS, et al.
No. 95 CA 0956.
Court of Appeal of Louisiana, First Circuit.
April 4, 1996.
Writ Denied June 7, 1996.
*269 Arthur Cobb, Baton Rouge, for Plaintiff Gloria Sanchez.
Steve E. Adams, Thomas D. Fazio, Baton Rouge, for Defendant Louisiana Insurance Guaranty Association.
Michael A. Patterson, Baton Rouge, for Defendants Kirk A. Patrick, III and McGlinchey, Stafford & Lang.
Before CARTER and PITCHER, JJ., and CRAIN, J. Pro Tem.[1]
PITCHER, Judge.
This is an appeal of a trial court's judgment, imposing sanctions against the Louisiana Insurance Guaranty Association (LIGA), Kirk Patrick (Mr. Patrick), an attorney for LIGA, and McGlinchey, Stafford & Lang (McGlinchey), the law firm that employs Mr. Patrick. Plaintiff, Gloria Sanchez (Ms. Sanchez), also appeals and seeks an increase in the sanction award.

FACTS AND PROCEDURAL HISTORY
On April 29, 1992, Ms. Sanchez was a guest passenger in a vehicle driven by Steven Fondren. Mr. Fondren was driving his 1991 Ford in a westerly direction on La. Highway 1148 in the Parish of Iberville, Louisiana. Upon approaching a railroad crossing approximately 110 feet from La. Highway 1, with the barrier down and a train in sight, Mr. Fondren drove his vehicle around the barrier in an attempt to beat the on-coming train to the crossing. As the Fondren vehicle crossed the tracks, the train struck the vehicle, causing Ms. Sanchez to suffer multiple injuries.
Mr. Fondren was insured by Liberty Lloyds Insurance Company (Liberty Lloyds) and had bodily injury coverage up to $10,000.00. Mr. Fondren reported the accident to Liberty Lloyds and provided it with a copy of the accident report. Shortly thereafter, Liberty Lloyds settled Mr. Fondren's property damage claim.
After unsuccessful attempts to settle her claim, Ms. Sanchez filed suit on December 16, 1992, against Mr. Fondren, Liberty *270 Lloyds, and LIGA, in solido. At this juncture, Liberty Lloyds had not been declared insolvent but had been placed in voluntary rehabilitation on December 14, 1992.
By letter dated March 2, 1993, LIGA requested that it be dismissed from the suit because Liberty Lloyds had not been declared insolvent, citing LSA-R.S. 22:1379(4)(B) as authority for the dismissal. However, on May 16, 1993, a declaration of insolvency was entered against Liberty Lloyds, and a stay order was imposed, halting all proceedings against Liberty Lloyds. In addition to the imposition of the stay order, LIGA took over all of Liberty Lloyds' files and claims pursuant to LSA-R.S. 22:1376.
On or about October 21, 1993, Kirk Patrick, an attorney with the law firm of McGlinchey, Stafford & Lang (McGlinchey), was assigned some eighty (80) of Liberty Lloyds' files, including the Sanchez file. These files were obtained by the Commissioner of Insurance from the law firm of McNulty & O'Connor. When Mr. Patrick reviewed the Sanchez file, he discovered an unsigned draft answer, a draft set of interrogatories, a draft Request for Production of Documents, and an unsigned cover letter. The file was devoid of an accident report or the name of the adjuster who was assigned to the claim. Mr. Patrick also reviewed the suit record and found that Mr. Fondren was served with the Sanchez petition. Concerned about a possible default, Mr. Patrick filed an answer on January 19, 1994, in the form of a general denial. Mr. Patrick also plead the affirmative defenses of contributory negligence, failure to mitigate damages, and statutory limitations upon LIGA's liability, as set forth in LSA-R.S. 22:1375 et seq. In addition to filing an answer, Mr. Patrick also sought to discover whether there was other insurance to cover the Sanchez claim.
On March 24, 1994, Mr. Fondren was deposed. At his deposition, Mr. Fondren admitted that he was solely at fault in the accident.
On April 14, 1994, Mr. Patrick received his discovery responses, which indicated that there was no other insurance to cover the claim. Mr. Patrick then recommended that the Sanchez claim be settled for Liberty Lloyds' policy limits, less LIGA's $100.00 deductible. In June, 1994, Mr. Patrick conveyed LIGA's settlement offer to Ms. Sanchez.
On June 8, 1994, Ms. Sanchez filed a "Motion for Heavy Sanctions." In her motion, Ms. Sanchez alleged that neither LIGA nor its representative talked to the insured (Mr. Fondren) or the bankrupt insurance company (Liberty Lloyds) but still filed an answer denying fundamental truths in violation of LSA-C.C.P. art 863.
A final settlement was effected between the parties, and a partial dismissal was filed on August 23, 1994, dismissing the suit against Mr. Fondren with prejudice. Ms. Sanchez, however, reserved all of her rights against LIGA.
A hearing on the motion for sanctions was held on October 17, 1994. During the hearing, the trial court found that, because Mr. Patrick filed an answer without discussing the matter with anyone and without getting an extension of the time to file his answer, he committed a technical violation of law. At the close of the hearing, the trial court held that sanctions should be imposed against Mr. Patrick, McGlinchey, and LIGA in the amount of $1,500.00. It is from this judgment that Mr. Patrick, McGlinchey, and LIGA appeal.
Mr. Patrick and McGlinchey have set forth the following assignments of error for our review:
1. The trial court erred in sanctioning Kirk Patrick for filing a general denial answer without obtaining an extension of time to further investigate the claim.
2. The trial court erred in holding the law firm of McGlinchey, Stafford & Lang liable for C.C.P. art. 863 conduct.
3. The trial court erred in finding and holding Kirk Patrick and McGlinchey, Stafford & Lang and LIGA solidarily liable under the facts of this case.
LIGA alleges the following assignments of error:
1. The Trial Court erred in sanctioning Mr. Patrick for filing an answer in the *271 form of a general denial for lack of sufficient information without first getting an extension of time to further investigate the claim.
2. Alternatively, the Trial Court erred in sanctioning LIGA in the absence of a showing that LIGA participated in, or had actual knowledge of, the filing of an allegedly improper Answer.
Ms. Sanchez, in her single assignment of error, alleges that the trial court's award of $1,500.00 in sanctions was manifestly erroneous.

DISCUSSION
Mr. Patrick, McGlinchey, and LIGA all contend that the trial court erred in imposing sanctions against Mr. Patrick for filing an answer in the form of a general denial without first getting an extension to further investigate the claim. On the other hand, Ms. Sanchez contends that, because the answer denied fundamental truths, sanctions should be imposed.
LSA-C.C.P. art. 863 provides, in pertinent part, as follows:
A. Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading and state his address.
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.
E. A sanction authorized in Paragraph D shall be imposed only after a hearing at which any party or his counsel may present any evidence or argument relevant to the issue of imposition of the sanction.
Article 863 is derived from Rule 11 of the Federal Rules. Because there is limited jurisprudence interpreting and applying Article 863, the Federal decisions applying Rule 11 provide guidance to this court. See Diesel Driving Academy, Inc. v. Ferrier, 563 So.2d 898 (La.App. 2nd Cir.1990). Both Rule 11 and Article 863 apply to the signing of pleadings, motions and other papers, imposing upon attorneys and litigants affirmative duties as of the date a document is signed. The district court must determine if the individual, who has certified the document purported to be violative, has complied with those affirmative duties. See Thomas v. Capital Security Services, Inc., 836 F.2d 866, 875 (5th Cir.1988). The standard of review by the appellate court has been referred to as the "abuse of discretion" standard. Diesel Driving Academy, Inc. v. Ferrier, 563 So.2d at 903. We conclude that this standard is nothing more or less than the "manifestly erroneous" or "clearly wrong" criteria used by the appellate courts in reviewing a trial court's factual findings. Loyola v. A Touch of Class Transportation Service, Inc., 580 So.2d 506, 509 (La.App. 4th Cir.1991). Once the trial court finds a violation of Article 863 and imposes sanctions, the determination of the type and/or the amount of the sanction is reviewed on appeal utilizing the "abuse of discretion" standard. Succession of Thomas, 602 So.2d 1108, 1110 (La.App. 1st Cir.1992).
Thus, the obligation imposed upon litigants and their counsel who sign a pleading is to make an objectively reasonable inquiry into the facts and the law. Subjective good faith will not satisfy the duty of reasonable *272 inquiry. Loyola v. A Touch of Class Transportation Service, Inc., 580 So.2d at 509-510.
Among the factors to be considered in determining whether reasonable factual inquiry has been made are:
1) The time available to the signer for investigation;
2) The extent of the attorney's reliance on his client for the factual support for the document;
3) The feasibility of a prefiling investigation;
4) Whether the signing attorney accepted the case from another member of the bar or forwarding attorney;
5) The complexity of the factual and legal issues; and
6) The extent to which development of the factual circumstances underlying the claim requires discovery.
Loyola v. A Touch of Class Transportation Service, Inc., 580 So.2d at 510.
The factors for determining whether reasonable legal inquiry was made include:
1) The time available to the attorney to prepare the document;
2) The plausibility of the legal view contained in the document;
3) The pro se status of the litigant; and
4) The complexity of the legal and factual issues raised.
Loyola v. A Touch of Class Transportation Service, Inc., 580 So.2d at 510.
In order to impose sanctions, a trial court must first find that one of the affirmative duties imposed by article 863(B) has been violated. LSA-C.C.P. art. 863(D). The certification required by paragraph B of the article is, from a grammatical reading of the paragraph, a four-part certification, the violation of any part of which would fatally infect the entire certification. The first part of the certification is that an attorney has read the pleading. The second part is that to the best of the attorney's knowledge, information, and belief formed after reasonable inquiry, the pleading is well grounded in fact. Thirdly, the attorney must certify that the pleading is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. Fourth, and lastly, the attorney certifies that the pleading is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Succession of Thomas, 602 So.2d at 1110.
Article 863, similar to Rule 11, is not to be used simply because parties disagree as to the correct resolution of a matter in litigation. Rule 11's use is intended only for exceptional circumstances. Gaiardo v. Ethyl Corp., 835 F.2d 479, 483 (3rd Cir.1987). In determining a violation of Article 863, the trial court should avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion or other paper was submitted. Gaiardo v. Ethyl Corp., 835 F.2d at 484.
Mr. Patrick testified that, upon receiving the eighty (80) LIGA files, he had his paralegal sort them into three different stacks: one stack contained files where LIGA had been named; one stack contained the files which had not been supplemented and amended to name LIGA; and one stack contained files where the insured had been served. Mr. Patrick stated, when he opened the Sanchez file in January, 1993, the stay order had been lifted since November, 1992, and he was afraid that a default would be entered if he did not answer. Mr. Patrick also stated that the file did not have any information regarding the name of the LIGA adjuster assigned to the file.
The trial court, in its reasons for judgment, noted that there was a tremendous volume of cases involving LIGA, resulting in a crisis situation. Notwithstanding this recognition, the trial court went on to find that getting an extension of time would have been the better course of action than filing an answer in the form of a general denial. In hindsight, we agree with the trial court that an extension of time would have helped Mr. Patrick make a more thorough inquiry and would have helped him to prepare a more factually correct answer. We are cautioned, however, that hindsight should not serve as the basis for imposing sanctions. Gaiardo v. *273 Ethyl Corp., 835 F.2d at 484. Where there is the slightest justification for the exercise of a legal right, sanctions should not be imposed. Only when the evidence is clear that no justification exists should sanctions be considered. Loyola v. A Touch of Class Transportation Service, Inc., 580 So.2d at 513.
In this case, Mr. Patrick was faced with a situation where he needed to close the door to a possible default. The stay order that had been in effect had expired almost two months prior to his opening the Sanchez file. Based upon the information Mr. Patrick had at that time, and the time constraints that he was operating under, an answer in the form of a general denial was not inappropriate. When considering the actions of Mr. Patrick in light of the affirmative duties imposed upon him by LSA-C.C.P. art. 863, we do not find that the pleading was improper, nor do we find that it was interposed for an improper purpose. The answer in the form of a general denial was not harassing, nor did it cause any unnecessary delay or needless increase in the cost of litigation. The trial court's finding that Mr. Patrick's actions constituted a technical violation does not, in our estimation, rise to a level where sanctions should be imposed. Thus, we find that the trial court erred in imposing sanctions against Mr. Patrick.
Additionally, we find that the trial court erred in imposing sanctions against McGlinchey. The law is clear that the duty imposed by LSA-C.C.P. art 863 is a personal, non-delegable duty imposed on the attorney himself. The duty, therefore, belongs to the individual attorney, and the law firm may not be sanctioned for violating the duty. Diesel Driving Academy, Inc. v. Ferrier, 563 So.2d at 906.
Because we find that Mr. Patrick and McGlinchey should not be sanctioned, it necessarily follows that the trial court erred in imposing sanctions against LIGA.

CONCLUSION
For the foregoing reasons, the judgment of the trial court, imposing sanctions pursuant to LSA-C.C.P. art. 863 upon Kirk Patrick, the law firm of McGlinchey, Stafford & Lang, and the Louisiana Insurance Guaranty Association, is reversed. Costs of this appeal are assessed against plaintiff, Gloria Sanchez.
REVERSED.
NOTES
[1] Judge Hillary Crain, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.